Phil S. Flemming (#014778)
YEN PILCH ROBAINA & KRESIN PLC
6017 North 15th Street
Phoenix, Arizona 85014
Telephone: (602) 682-6450
Facsimile: (602) 682-6455
psf@yprklaw.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Chad H. Anderson, an individual,<br><br>Plaintiff<br><br>v.<br><br>AAH Acquisition, LLC, a Delaware Limited Liability Company dba Snap-tite Hose and dba All-American Hose; and Snap-tite Hose, Inc., an inactive Pennsylvania corporation,<br><br>Defendants. | No.<br><br>**COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff, Chad H. Anderson, by undersigned counsel, for his Complaint against Defendant AAH Acquisition, LLC dba Snap-tite Hose and dba All-American Holdings, LLC, and Defendant Snap-tite Hose, Inc. (collectively Defendants), alleges as follows:

**NATURE OF ACTION**

1. This action seeks judgment and remedies for Plaintiff Mr. Anderson and against Defendants for violations of the Arizona Wage Act, A.R.S. §§23-351, *et seq.*, and the Arizona Employment Protection Act, A.R.S. §§23-1501, *et seq.,* and for breach of contract and the duty of good faith and fair dealing.

**PARTIES, JURISDICTION AND VENUE**

2. Plaintiff is a citizen of the United States and the State of Arizona. He resides in Maricopa County, Arizona.

3. Defendant AAH Acquisition, LLC is a Delaware limited liability company (“AAH”), registered as a foreign entity to do business in the State of Arizona. The AAH

headquarters are located in Pennsylvania.

4. Defendant AAH has stated on its letterhead it is doing business as Snap-tite Hose and, on other letterhead, represented it is doing business as All-American Hose.

5. Defendant Snap-tite Hose, Inc., is an inactive Pennsylvania corporation, not registered to do business in Arizona.

6. This Court has proper jurisdiction based upon diversity jurisdiction, under 28 U.S.C. § 1332, based on the parties' complete diversity and the amount in controversy which exceeds the minimum required for diversity jurisdiction.

7. Venue is found in this District Court, pursuant to 28 U.S.C. § 1391(b)(2), because the events alleged to give rise to the stated claims occurred primarily in this District.

## FACTUAL ALLEGATIONS

8. Plaintiff became employed with Defendants in August 2017, as Regional Western Manager for Arizona, California, and New Mexico.

9. Plaintiff worked from Arizona.

10. Defendants agreed in writing to pay Plaintiff compensation that included a base salary and a commissions package.

11. Defendants, doing business as Snap-tite, produce and distribute hose products described on the website as "designed and engineered with leading-edge technology and hybrid materials - and all are proudly manufactured, assembled and proof-tested in the United States of America to meet NFPA standards." *See* https://snaptitehose.com/about/ (last viewed 1/7/2023).

12. Defendants acted as joint employers of Plaintiff.

13. Defendant AAH Acquisition LLC issued Plaintiff's paystub while he was employed by Defendants.

14. Defendants' management emails and logo identified the entity as Snap-tite Hose.

15. Defendant AAH Acquisition LLC documented the entity as All-American

Hose when it issued the Region Sales Manager Bonus Plan 2019 setting forth the restructured bonus compensation plan for Plaintiff and other Region Sales Managers.

16. Plaintiff met Defendants' sales targets during 2019 and 2020 for the incentives but Defendants delayed payment of the bonuses, repeatedly assuring Plaintiff the compensation would be forthcoming.

17. In spring 2020, Plaintiff and other Sales Managers and representatives, expressed serious concern about delayed compensation and the impact of the COVID-19 pandemic.

18. Defendants' management acknowledged belated compensation to Plaintiff and represented the incentive compensation, though delayed, would be back on track by the end of April 2020.

19. Plaintiff struggled to make ends meet and became distressed about his low base salary compensation.

20. Defendants called the sales representatives to attend the in-person National Sales Meeting in Erie, Pennsylvania in July 2020, where management announced they could not pay the commissions employees had earned for the prior six months.

21. At the 2020 Erie National Sales Meeting, Defendants' management announced it was facing business hardships due to the pandemic and represented they hoped to pay the commissions by the end of the year.

22. Management informed Plaintiff and other sales representatives to rely on their base salary as compensation and the incentives would be paid belatedly.

23. At the National Sales Meeting, management disclosed it had received PPP funding and used it to pay outstanding debts to suppliers and to pay some payroll during its shortfalls.

24. As a result of management's decision to delay incentive compensation, Plaintiff struggled to survive on a base salary that was substantially less than other, less experienced Sales Managers who performed the same work at higher base salaries.

25. During July 2020, Plaintiff asked his direct supervisor Jay Hillis, National

Sales Manager to equalize his base salary with that of his colleagues and addressed that his region had increased from covering three to covering twelve states since September 2019 with no base salary increase.

26. Defendants failed to pay Plaintiff the compensation due.

27. Through the end of 2020, Plaintiff and Mr. Hillis spoke at least monthly and Mr. Hillis confirmed Plaintiff multiple times that Plaintiff's request for a salary increase had not been granted and that his previously earned incentives, bonuses, and commissions would be paid soon.

28. Mr. Hillis informed Plaintiff that Snap-tite CEO-President Jeffrey D. Schad, was developing a new salary and incentive structure and assured him he would be paid.

29. During March 2021, Plaintiff called CEO Mr. Schad to complain he had not been paid for the work he performed regarding the unpaid incentives and was not paid a fair base salary. Mr. Schad acknowledged Plaintiff received the lowest base salary and was underpaid.

30. CEO Mr. Schad asked Plaintiff to share a compensation plan he considered fair for the sales representatives. Plaintiff responded by emailing a proposal to him.

31. Defendants continued to represent to Plaintiff and other sales representatives that the belated bonuses, commissions, and incentives would be paid soon.

32. On July 8, 2021, Defendants' CEO Mr. Schad sent Plaintiff on AAH Acquisition LLC letterhead, a written offer that detailed the modified compensation plan and claimed it provided an increased incentive compensation package for Plaintiff. Mr. Schad acknowledged in the letter the impacts of the COVID-19 pandemic.

33. Plaintiff responded to the offer and told his supervisor Mr. Hillis that he would lose approximately $38,000 in pay under the proposal, compared with commissions he earned in 2019. The modified plan did not increase his compensation.

34. Defendants also held a sales meeting during the August 2021 FDIC trade show in Indianapolis IN, where CEO Mr. Schad stated the company still had $280K of PPP funds.

35. Plaintiff was dismayed that his compensation had been lowered the prior month and that his back commissions had not been paid but management retained funds to use for lost compensation.

36. Defendants continued to represent they were resolving the pay problems and belatedly paid some earned commissions to Plaintiff in September 2021 but failed to deliver a report or accounting to identify which sales commissions were paid.

37. Plaintiff asked for documentation to confirm the accuracy of the commissions paid and Mr. Hillis told him it was too difficult to prepare a report because Defendants' data system was inadequate.

38. Defendants failed to provide Plaintiff adequate reports of sales made and commissions calculated for the pay owed to Plaintiff.

39. Plaintiff identified some errors from the incomplete information he had, finding some of his confirmed sales were not included in his commissions payment.

40. Defendants told Plaintiff to trust them.

41. Plaintiff loyally continued his efforts to represent Defendants and sell their products. He achieved renewals for contracts with his largest accounts, but management delayed for months the pricing terms. Management began to disregard Plaintiff's calls and communications, not responding to his urging them to provide pricing so the contracts could be closed.

42. As a result of Defendants' delays, Plaintiff lost credibility with his accounts and also lost some sales and commissions he worked and earned.

43. Plaintiff complained to his supervisor Mr. Hillis about Defendants' failures to act timely which disrupted and diminished his sales efforts and expected commissions.

44. In January 2022, Mr. Hillis told Plaintiff that he did not have the answers to Plaintiff's concerns and that the new Vice President Dan Corner handled those matters. Plaintiff attempted to reach Mr. Corner multiple times by email and telephone.

45. In January 2022, Defendants held a National Sales Meeting in-person in Erie, Pennsylvania. Plaintiff attended remotely because he had contracted COVID.

46. Defendants announced they were suffering difficulties with distribution, supplier, and shipping and they committed to paying commissions when sales were made instead of when shipments were delivered due to the backorders.

47. During the 2022 National Sales Meeting, Plaintiff and other sales representatives learned that Defendants had received federal PPP funding but had not used the funds to compensate its employees.

48. Plaintiff reported to Defendants' management in February 2022 that he still was owed unpaid bonuses and commissions and needed to be paid a fair base salary. He referenced in emails and talks the legal duty to pay the wages he was owed.

49. During March 2022, Plaintiff on multiple occasions reported to Defendants' management that he had not been paid on his earned commissions and that he had not received the promised catch-up compensation.

50. Defendants' management repeatedly apologized for the delay in payroll and represented they would resolve the compensation issue but did not.

51. Defendants did not pay the outstanding commissions and incentive bonuses Plaintiff had earned, as was repeatedly promised.

52. Defendants received federal funds to compensate employees such as Plaintiff but did not pay Plaintiff and Mr. Hillis told Plaintiff it was out of his hands.

53. Following Defendants' repeated empty representations that belated compensation would be paid and the brush-off from Mr. Hillis, Plaintiff determined he could no longer work under such conditions.

54. Plaintiff gave two weeks' notice to Defendants on June 22, 2022, explaining he was forced to resign due to Defendants' failure to pay compensation due.

55. Plaintiff could not continue work under those circumstances and was compelled to resign.

56. Defendants CEO Mr. Schad replied by acknowledging the company's "botched pay plans."

57. Plaintiff has suffered and continues to suffer unpaid earned compensation,

and lost income and benefits from the constructive discharge.

58. Plaintiff has suffered and continues to suffer damages to his professional reputation, and garden-variety emotional distress resulting from Defendants' unlawful retaliation after Plaintiff reported Defendants' violation of wage laws.

59. Plaintiff seeks all remedies available by law and recovery of attorneys' fees and costs caused by Defendants; wrongful conduct.

**Claim One**

**Violation of Arizona Wage Act and Claim for Treble Damages**

60. Plaintiff incorporates all prior allegations as though fully set forth herein.

61. Plaintiff was an employee of Defendants. A.R.S. §§ 23-350 and 23-362.

62. Defendants are employers, subject to Arizona laws governing payment of employee wages, pursuant to A.R.S. §§ 23-350, *et seq*.

63. Arizona law requires employers to pay compensation due timely to employees. A.R.S. § 23-351.

64. Defendants failed to pay Plaintiff's compensation in accordance with the written contract dated July 8, 2021.

65. Defendants owe Plaintiff his past due, promised compensation, commissions and bonuses for his final payroll through July 15, 2022.

66. Plaintiff relied on Defendants' repeated commitment that they would pay compensation cue, including the commissions and bonuses he earned.

67. Defendants failed to pay Plaintiff all compensation due in his final paycheck following his separation date of July 15, 2022, pursuant to A.R.S. § 23-353(B) and -355(A).

68. As a result of Defendants' violations of the Arizona wage laws, Plaintiff has suffered and continues to suffer damages by not receiving timely compensation when due.

69. Defendants willfully failed and refused to pay Plaintiff's earned wages and, therefore, is liable to Plaintiff for treble the amount of unpaid compensation. A.R.S. §§ 23-355, 23-360.

70. In addition to treble damages for the unpaid wages, Plaintiff is entitled to

attorneys' fees and costs, pursuant to A.R.S. §§ 12-341, 341.01, 23-355, 23-360, and 23-364(G).

## Claim Two

### Violation of Arizona Employment Protection Act

71. Plaintiff incorporates all previous paragraphs as though fully set forth herein.

72. The Arizona Employment Protection Act (AEPA) gives rise to a claim for unlawful retaliation where an employee is terminated in retaliation for having made a protected "disclosure by the employee in a reasonable manner that the employee has information or a reasonable belief that the employer … has violated, is violating [state law]" A.R.S. § 23-1501(A)(3)(c)(i).

73. Plaintiff disclosed to management that its failure to timely pay compensation including earned bonuses and commissions was contrary to law. *E.g.,* A.R.S. §§ 23-351(I) and 23-353(D).

74. The AEPA also gives rise to a legal claim arises for constructive discharge where conditions exist of a "continuous pattern of discriminatory harassment by the employer … or other similar kinds of conduct, if the conduct would cause a reasonable employee to feel compelled to resign." A.R.S. § 23-1502(A)(2).

75. Pursuant to A.R.S. § 23-1502(E), an employee may bring suit directly for constructive discharge where the employer "fails to provide written notice to its employees" as required.

76. Defendants failed to provide the required written notice to employees.

77. Regardless of Defendants' failure to provide notice under AEPA, Plaintiff gave more than fifteen days' notice of being compelled to resign where his resignation letter was submitted June 22, 2022 and his final date of employment was July 15, 2022, consistent with A.R.S. § 23-1502(B). Defendants failed to take corrective action.

78. Pursuant to A.R.S. § 23-1502(F), an employee may directly bring suit for constructive discharge where the employer acted outrageously, including "other conduct if the conduct would cause a reasonable employee to feel compelled to resign."

79. Defendants' continuing pattern of failing to timely pay Plaintiff compensation would compel a reasonable employee to resign, as Plaintiff did.

80. Arizona law requires compliance with state wage laws, including A.R.S. §§ 23-351, among others.

81. Plaintiff reported to Defendants his intent to resign due to Defendants' failure to pay compensation as they had committed to do and the failure to deliver payment of commissions compensation, contrary to state law.

82. AEPA protects an employee such as Plaintiff from retaliation against an employee for reporting violation of Arizona state law.

83. Defendants retaliated against Plaintiff after his disclosures of wage violations.

84. As a direct result of the Defendants' violation, Plaintiff has suffered and continues to suffer lost wages, benefits and emotional distress, as may be proven at trial.

85. Plaintiff seeks to recover against Defendants compensatory remedies, including but not limited to lost income and benefits, and pre-judgment and post-judgment interest on belated and unpaid wages.

## **Claim Three**

## **Breach of Contract, Including Breach of Good Faith and Fair Dealing**

86. Plaintiff incorporates all prior allegations as though fully set forth herein.

87. Plaintiff and Defendants entered into a written contract, the July 8, 2021 written offer, when Plaintiff accepted Defendants' written offer and continued his employment under the terms set forth in writing prepared by Defendants.

88. Arizona implies a duty of good faith and fair dealing in every contract.

89. Plaintiff reasonably relied on the terms and expectations that he would receive timely compensation he earned and pricing information to close sales.

90. As of the July 8, 2021 letter from CEO Mr. Schad, Plaintiff relied on representations that Defendants would mitigate the delays and pay him the increased compensation, commissions, and incentives described, as well as pay the compensation he

would have earned from the start of 2021.

91. Defendants breached the contract by failing to pay the compensation, including commissions and incentives when due.

92. Defendants also breached their duty of good faith and fair dealing in misrepresenting to Plaintiff multiple times that he would be paid fully for work performed but he was not.

93. Plaintiff has suffered actual and consequential contract damages, including emotional distress and harms to his professional reputation and opportunities, as will be proven at trial.

94. Plaintiff seeks recovery for his attorneys' fees and costs incurred in this action, pursuant to A.R.S. §§ 12-341 and 341.01.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Chad H. Anderson prays for judgment entered in his favor on each claim and against the Defendants jointly and severally and awarding Plaintiff:

A. Unpaid and untimely paid wages and compensation at treble damages, pursuant to A.R.S. § 23-364(G);

B. Compensatory damages pursuant to the AEPA, including lost wages and benefits, emotional distress, and harm to his professional reputation, in the amounts proved at trial;

C. Contract and consequential damages caused by Defendants' breach as proved at trial;

D. Damages caused by Defendants' breach of the duty of good faith and fair dealing as proved at trial;

E. Pre-judgment and post-judgment interest in the amounts awarded as permitted by law;

F. Attorneys' fees and costs against Defendants as authorized by Court rules or statutes, including but not limited to A.R.S. §§ 12-341, 12-341.01, and 23-364(G);

F. Taxable costs as the prevailing party;

G. Such further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all matters subject to jury trial.

DATED this 8th day of June 2023.

YEN PILCH ROBAINA & KRESIN PLC

By /s/ Phil S. Flemming
Phil S. Flemming
Attorneys for Plaintiff